Judge Logan
delivered the opinion of the court.
This was a suit in chancery, brought by Metcalfe, in-joining a judgment at law, and praying the rescission of a contract.
He charges, that having settled on a tract of land, and understanding that Lee, the appellant, held a bond on Cuthbert Bullett for 1000 acres, part of a tract of 8000 acres, including his farm'. And understanding, also, that Lee was equally interested with James Hughes, in more than an undivided moiety of a tract of 25000 acres, patented to the heirs of Robert Young and to the said Hughes, which, likewise, covered his improvement; he applied to and purchased from the said Lee, not only the bond on Bul-lett, but also 1000 acres, part of the larger, claim, if in the division so much thereof should fall to the said Lee, within Bulietts’s claim.
That the claim of Bullett was not only covered with that of Young’s heirs and Hughes, but by other claims in the name of Thomas Marshall; and that in a contest between the claims of Bullett and Marshall, the latter has prevailed; thereby leaving, as the only prospect of securing his improvements, the interest in the claim of Young.
And that Lee, holding but an equitable interest in the claim of Young, consented, after the sale to the said Met-calfe, to a compromise between the said Hughes and the re- *116 preseniatives of Marshall; whereby all that part of Young’s claim, lying within Bullett’s, was relinquishéd to the Mar-shalls, for parts of their claims lying out of Bullett’s.
Lee contends that his interest in Young’s claim, really formed no essential part of the contract: That Metcalfe had previously applied to James Hughes, who informed him that he had been the attorney of Bullett, in a contest with the Marshalls; and that, in that suit, Bullett’s claim was sustained by the Washington district court; and he thought correctly sustained; and did not intend to contend against it with Young’s claim.
That, he, the said Lee, claimed only at that time, by a parol agreement with Hughes, an interest in Young’s claim. But having agreed to sell to Metcalfe, Bullett’s bond for ¿400 in certain work without recourse on him, jt was thought that he ought not to retain the interest in Young’s, if it should be allotted to him in the same place; and that he, therefore, covenanted, that if, in the division of Young’s tract, so much thereof should fall to him within the survey of Bullett, that he would relinquish the same to Metcalfe, Believing however, that it was the real expectation of both, that the claim of Young within the interference with Bul-lett, was of no essential importance.
Upon the bond for the Í400, Lee instituted suit and recovered judgment at law. To injoin proceedings thereon, and be relieved from the contract, Metcalfe filed his bill: And the circuit court having decreed in his favor, Lee has appealed to this court.
' An attention to the following facts, will be important to a correct understanding of this case. Metcalfe, on the 28th of March, 1795, purchased of Thomas Harrison, executor of Cuthbert Bullett, deceased, the 8000 acre tract: And afterwards, on the 6th of January, 1803, relinquished the benefit thereof to William Barnes, who, in consideration thereof, covenanted to convey to the said Metcalfe, by deed with special warranty ¿gainst the devi-sees of C. Bullett, 300 acres, part of said fract, to include his farm in a square at 8s. per acre, when the disputes with the interfering claims were determined: and, also, 200 acres in the south east corner of the tract, at 20s. per acre, in horses, when the disputés with the interfering claims Were settled; to refund 150, which Metcalfe had advanced in part of the purchase; and, also, to pay other sums advanced for taxes, fees, &e. . '
*117 Previous to this contract, the claim of Bullett was sustained by the district court: And, afterwards, on the 11th of February, 1806, Met calfe purchased Bullett’s bond for the 1000 acres; and executed to Lee, a release against all responsibility in consequence of the assignment thereof.
And Lee, at the same time, gave him his obligation, reciting that as he claimed an equitable interest in James Hughes’ proportion of Young’s survey, that when he received a legal title, he would relinquish to Metcalfe 1000 acres of that claim, to cover the same land, which might be as» signed to him under Bullett’s bond; provided, that on a division with Hughes and Young’s heirs, that much within the survey of Bullett should fall to him.
Subsequent to this agreement, the Marshalls prosecuted a writ of error to the decree sustaining Bullett’s claim; which having been reversed, a compromise was afterwards entered into between Hughes and them, of so much of the interference between Marshall’s and Young’s claims, as lies within the survey of Bullett.
Whether, from the nature of this compromise, Metcalfe is entitled to relief against his obligation; and what should be the nature and extent of that relief, are the questions presented for the consideration of this court.
It is a general rule, that, in order to justify the rescission of a contract, the complainant ought to restore the defendant: And although there are exceptions to this rule; yet, the present will be found not to present a case of that kind. If the contract be set aside, Lee cannot be restored; nor will his act have produced the injury to the complainant.
Although the bond on Bullett shall have proved of no real value; yef, at the time of the contract, a supposed value was attached to it. It was competent for the parties to judge of that value, and to make a chancing bargain. Thé chance was then thought, at least, equal in its favor; and the price stipulated for it, is proven to have been but about half the value of the land, upon averaging the whole tract, independent of the interest under Young’s claim. If, therefore, the purchaser were relieved from that sum, the chance having eventuated against him, the bargain would be rendered a very unequal one; unless the ground of relief can be drawn from the conduct of the defendant operating to the injury of the complainant commensurate with the relief.
If the interest in the claim of Young, formed no mate *118 rial inducement in making the contract; then, to lay hold ^le circumstance of its relinquishment for the purpose of vacating the contract, would certainly be improper. This would be catching at a mere casual and unimportant feature of the contract, to make the improper act of another jn an immaterial matter- — working no essential injury, redeem one from the effect of the hazard he intended. For if (as there is really no doubt) the bond on Bullett was the reaj object of the contract, and the relinquishment of the interest in Young’s claim has, in fact, produced little or no injury to the complainant; then it would be truly seeking matter of pretence only, to avoid the essential part of the , t v ■ v
A contract compoaed of various parts, the essentials will not be dissolved if "re* unataaLv able: the in-jmed party will be left to <aw.
When the contract was made, Bullett’s claim was thought good: It had been so decided; and that decision, for several years, permitted to remain undisturbed: — No appeal taken— no writ of error prosecuted. The counsel, who managed the suit and who was interested in Young’s claim, was consulted, and gave, as his opinion, that Bullett’s was superior, and against which he did not intend to contend with Young’s. Metcalfe, himself, had before purchased and settled down under it. He was apprised that Lee claimed only an interest with Hughes in Young’s claim, it was, therefore, not probable that he should be turned over from Hughes, for the purpose of purchasing that interest of Lee. It is more rational to suppose, that the interest in Bullett’s was the primary object.
But by the agreement, Metcalfe’s interest in Young’s claim, was made to depend upon that part of Bullett’s which might be allotted to Lee. This circumstance is, at least, calculated to show, that the bond on Bullett was the principal object in the purchase. But upon this point the letter of Metcalfe in August, 1810, several years after the compromise between the Marshalls and Hughes, is still more conclusive. In that letter, be apologises for not doing Lee’s work sooner, and does not intimate the most distant idea of a discharge from his obligation; but speaks of making preparation, to go on with that work.
It is, therefore, the opinion of this court, that the contract ought not to be rescinded. And that, for any injury sustained by Metcalfe through the transfer to the Marshalls, of that part of Young’s claim which conflicted with Bul-lett’s,' his redress ivas in damages for the amount of such injury. But isjjhis case, no injury is shown. It is not even *119 alledged, that the claim of Young to that interference, was suprior either to Bullett’s or Marshall’s. The circuit court, therefore, could not properly have given, on this branch of the case, the appropriate relief, if, from the loss of Young’s claim, he has sustained damages.
Bibb for appellant, Hardin and Talbot contra.
And, as the complainant has not sought relief in his bill, for damages, he ought to be permitted, if he chooses to do so, to resort to his remedy at law upon the covenant of Lee for the damages sustained.
The decree must be reversed with cost, and the cause remanded, that a decree may be rendered agreeable to this opinion.